1  Steven Carlson (CA Bar No. 206451)
   Elvira Belle Borovik (CA Bar No. 338821)
2  Robins Kaplan LLP
   555 Twin Dolphins Drive
3  Suite 310
   Redwood City CA 94065
4  Telephone: (650) 784-4040
   Fax: (650) 784-4041
5
6  Attorneys for Plaintiff Fizz Social Corp.

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11 FIZZ SOCIAL CORP.,                          Case No. 3:25-cv-3995

12            Plaintiff,                        **COMPLAINT FOR:**

13      vs.

14 MAPLEBEAR, INC., d/b/a/ INSTACART;          1. **COMMON LAW TRADEMARK**
   PARTIFUL CO., and DOES 1-20, inclusive,        **INFRINGEMENT**
15
           Defendants.                          2. **FALSE DESIGNATION OF ORIGIN**
16                                                 **AND UNFAIR COMPETITION (15**
                                                   **U.S.C. § 1125(a))**
17

18                                              3.  **VIOLATION OF THE ANTI-**
                                                   **CYBERSQUATTING CONSUMER**
19                                                 **PROTECTION ACT (15 U.S.C. §**
                                                   **1125(d))**
20

21

22                                              4. **VIOLATION OF CALIFORNIA'S**
                                                   **UNFAIR COMPETITION LAWS**
23                                                 **(Cal. Bus. & Prof. Code § 17200 et**
                                                   **seq.)**
24

25                                              5. **DECLARATORY RELIEF**

26

27

28

                                   -1-

**COMPLAINT**

Plaintiff FIZZ SOCIAL CORP. ("Fizz" or "Plaintiff") as and for its Complaint against Defendants MAPLEBEAR, INC., d/b/a Instacart ("Maplebear" or "Instacart), and Partiful, Co. ("Partiful") (collectively, the "Defendants") alleges:

**NATURE OF CASE**

1.     From its roots on over 400 college campuses, Plaintiff has established the premier social media and event planning platform that specifically targets the Generation Z ("Gen-Z") audience (the "Fizz Platform"). College students and others in the Gen-Z demographic know and trust Fizz, and use Fizz to foster community and to plan events, and especially, to throw parties.  Plaintiff has also developed its Fizz Marketplace as a way to buy and sell goods to others in their communities.  As a leading platform for discourse and commerce in the Gen-Z community, Plaintiff is in an enviable position for promoting e-commerce in this important demographic.

2.     Plaintiff protects its valuable FIZZ brand through trademark protection.  Since 2022, Plaintiff has used the FIZZ trademark as a source identifier in connection with Plaintiff's social media platform and community services known as Fizz.  Plaintiff has valuable trademark rights in its highly reputable FIZZ™ trademark (and other variants, including the applied-for marks in Plaintiff's U.S. Application Serial Nos. 98/353,568, and 99/174,143 which are currently pending with the USPTO, collectively, the "FIZZ Marks").  As a result, Plaintiff has built up substantial goodwill in its FIZZ Marks, and a strong reputation, including brand recognition, for the social platform it operates under the FIZZ Marks (the "Fizz Platform").

3.     Defendant Partiful offers a competing app for throwing parties and events. Partiful also targets a Gen-Z audience.

4.     Instacart is the well-known e-commerce behemoth, which has developed its reputation by facilitating regular grocery store shopping for families.  By its nature, Instacart has targeted an older demographic.

5.     On May 6, 2025, Instacart launched a marketing blitz to break through and

capture the Gen-Z demographic.  That day, Instacart announced its partnership with Partiful to deploy its e-commerce platform and turn its attention on parties for the Gen-Z demographic. Exploiting the FIZZ Marks and the goodwill that Plaintiff has accrued in its FIZZ brand, Instacart has launched a new app called "Fizz" (the "Fizz App").   Expressly, Instacart is targeting the Gen-Z audience.  As reported in an interview with TechCrunch: "The social, party-planning aspect of Fizz enables the company to tap into a younger demographic that may not be using Instacart."  *See* https://techcrunch.com/2025/05/06/instacart-launches-fizz-a-new-app-for-ordering-drinks-and-snacks-for-parties/ (last accessed May 7, 2025).

6.      Instacart has incorporated a social component into its platform, seeking to drive adoption with the Gen-Z audience.  As reported by TechCrunch, "Instacart is taking a different approach by incorporating a social aspect in its new app, as it aims to capture the attention of Gen Z and millennials to drive its success." *Id.*

7.      This new Fizz App by Instacart and Partiful is a blatant attempt to misappropriate the goodwill that Plaintiff has painstakingly developed through its continuous use of the FIZZ Marks among the Gen-Z demographic.  Together, Instacart and Partiful are competing head-on with Plaintiff in its core market of event planning for the Gen-Z demographic.  Instacart and Partiful could have chosen any name for their new venture, but rather than compete on an even playing field, they are using FIZZ—a mark identical to Plaintiff's in connection with the Fizz App ("Infringing Mark").   Accordingly, Defendants' unauthorized use of the FIZZ Marks is not only likely to cause confusion as to the association, sponsorship, and/or approval of Defendants' social event promotion and planning mobile application and services, it also constitutes bad faith.

8.      Plaintiff brings this action based on Defendants' past, current, and planned use of the FIZZ trademark in connection with collaborative event promotion and planning, social discovery, and social networking services targeting the same Gen-Z consumer base that Plaintiff has served since at least January 2022. Plaintiff alleges claims for federal trademark infringement and unfair competition under Sections 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §1125(a), for cybersquatting under the Anti-Cybersquatting

Case No.                                                                                                      COMPLAINT

1    Consumer Protection Act, 15 U.S.C. § 1125(d)(1), and for substantial and related claims of

2    unfair competition and common law trademark infringement arising under California law.

3                                               **PARTIES**

4        9.        Plaintiff Fizz is a corporation organized under the laws of Delaware, which was

5    founded at Stanford University in Palo Alto, and having had its principal place of business

6    located at 2335 El Camino Real; Palo Alto, California.  On or about March 3, 2025, Plaintiff

7    moved its principal place of business to 584 Broadway St., New York, NY  10012.  Plaintiff is

8    the owner of the FIZZ Marks, which Plaintiff has been using in the stream of commerce since at

9    least as early as 2022. Plaintiff is also the owner of the public U.S. Application Serial Nos.

10   98/353,568, and 99/174,143 which are currently pending with the USPTO.

11       10.       Plaintiff is informed and believes and thereupon alleges that Defendant Instacart

12   is a corporation organized under the laws of Delaware with a principal place of business located

13   in 50 Beale Street, Suite 600, San Francisco, California 94105. According to Instacart, it has

14   created, developed, and launched the Fizz App. *See*

15   https://techcrunch.com/2025/05/06/instacart-launches-fizz-a-new-app-for-ordering-drinks-and-

16   snacks-for-parties/ (Last accessed May 7, 2025).

17       11.       Plaintiff is informed and believes and thereupon alleges that Defendant Partiful is

18   a corporation organized under the laws of New York with a principal place of business located

19   at 147 Prince Street, PR4/11, Brooklyn, New York, NY 11201, and that Partiful has participated

20   in, directed, or caused the acts complained of herein to occur within the Northern District of

21   California. According to Defendant Instacart, the Fizz App was "developed in collaboration

22   with the hugely popular event invite app Partiful." *See*

23   https://www.fastcompany.com/91327971/instacart-launches-fizz-a-group-ordering-app-for-

24   party-drinks-and-snacks (Last accessed May 7, 2025).

25       12.       Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff and therefore,

26   are sued under fictitious names. Their true names, capacities and respective liabilities are

27   unknown to Plaintiff at this time. When their true names, capacities and respective liabilities are

28   ascertained, Plaintiff will amend this Complaint to show the true names and capacities of DOES

-4-

1 through 20. Plaintiff is informed and believes and thereon alleges that each of the fictitiously

named defendants is a claimant or otherwise claims an interest in the policies at issue in this

action.

## JURISDICTION AND VENUE

13.     This action arises, in part, under the Lanham Act, 15 U.S.C. § 1125, *et seq.*

("Lanham Act") and this Court therefore has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a),

and under the Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125, *et seq.*

14.     The Court has supplemental jurisdiction over Plaintiff's claims arising under

California state law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so

related to Plaintiff's Lanham Act claim that they form part of the same case and/or controversy

and derive from a common nucleus of operative facts.

15.     This Court has personal jurisdiction over Defendants because Defendants have

directed tortious acts that they knew or should have known would cause injury to Fizz in this

District.  Further, Defendant Instacart, an entity involved in the development, governance and

expansion of the Fizz App, resides in California and has continuous, systematic and substantial

contacts with the State of California.

16.     Defendant Partiful has had continuous, systematic and substantial contacts with

the State of California. Defendant Partiful has partnered with Defendant Instacart to launch the

Fizz App, including targeting states such as California, including within this District, for its

launch.  Defendant Partiful has also integrated the Fizz App on the Partiful event page, allowing

users of Partiful to add items to the "Fizz Party Cart."

17.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) in that a

substantial part of the events or omissions giving rise to the claims herein arose in this District.

In particular, Defendants have used the Infringing Mark in the judicial District, including

advertising and promoting their social networking and event coordination app in this District.

In addition, Defendants regularly conduct business in this District and are actively engaged in

soliciting business in California, including this District.

**PLAINTIFF'S VALUABLE MARKS**

18.    Plaintiff is the owner of all right, title, and interest in and to the FIZZ Marks, which it has continuously used in commerce throughout the United States since at least January 5, 2022, in connection with its widely adopted mobile application and related services, including event promotion, community engagement, and social discovery tailored to Gen-Z communities.  Although registration of Plaintiff's FIZZ Marks is still pending, Plaintiff's longstanding, continuous, and exclusive use of the FIZZ Marks has established substantial goodwill and strong common law trademark rights in the FIZZ Marks.  As a result of Plaintiff's extensive use, advertising, and recognition among consumers—particularly in the Gen-Z demographic—the FIZZ Marks have become a distinctive identifier of Plaintiff's brand and services.  Plaintiff's rights in the FIZZ Marks predate Defendants' first use in 2025, and are enforceable under common law.

19.    Plaintiff is also the owner of U.S. Trademark Application Serial Nos. 98/353,568[1] and 99/174,143 for the FIZZ Marks, which was filed with the United States Patent and Trademark Office on January 11, 2024, and May 7, 2025, respectively, and remain pending (the "Fizz Applications").  The Fizz Application No. 98/353,568 covers Plaintiff's use of the FIZZ Marks in connection with its mobile application in Class 009 and related digital services in Classes 035 and 042.  A copy of the Fizz Application No. 98/353,568 is attached hereto as **Exhibit 1** and incorporated herein by reference.  The Fizz Application No. 99/174,143 covers Plaintiff's use of the FIZZ Marks in connection with its mobile application in Class 009 and related digital services in Classes 035, and claims date of first use in commerce as January 5, 2022.  A copy of the Fizz Application No. 99/174,143 is attached hereto as **Exhibit 2** and incorporated herein by reference.

20.    Plaintiff has created an innovative social platform from the ground up, solving the

---

[1] On March 13, 2025, the USPTO Examiner withdrew its Final refusal of the U.S. Trademark Application Serial Nos. 98/353,568, permitting Plaintiff to cure the minor issue of wording in connection with the identification of goods and services. Plaintiff has until June 11, 2025 to submit the required correction. Once submitted, the Application Serial Nos. 98/353,568 will be allowed and proceed to registration, with the priority filing date of January 11, 2024.

challenges of conventional event coordination and socializing.  The Fizz Platform is based upon a unique collaborative approach that enables its users to discover parties, organize gatherings, and coordinate social events through its intuitive mobile interface.  The Fizz Platform empowers users to connect with peers, share event details, coordinate meetups, and build authentic communities at over 400 schools nationwide and in other Gen-Z communities.  Through features designed specifically for social planning and community building, the Fizz Platform fosters genuine connections that translate to meaningful real-world relationships and gatherings throughout the Gen-Z community.

21.    Plaintiff has used the FIZZ Marks since 2022 in connection with its Fizz Platform and its business operations related thereto.  In particular, Plaintiff has dedicated significant time, energy and resources to developing distinctive social networking services that facilitate event discovery, party planning, and community building among the Gen-Z community.  These services have established a recognizable brand identity within the mobile social application industry, now serving Gen-Z'ers across more than 41 states who rely on the Fizz Platform to coordinate gatherings including parties, discover events, and connect with peers.

22.    Below are screenshots of Plaintiff's Fizz Platform (expanded, and zoomed-in), showing its use as a party planning platform.  Plaintiff promotes its Fizz Platform so you can: "See what's happening in your community on Fizz."  Plaintiff's Fizz Platform features an "EVENT" feed, as exemplified in the below screenshots.  The Fizz Platform describes that it is "your go-to place to connect with the people who matter to you most":

Case No.                                                                                                                    COMPLAINT



23.     Plaintiff also offers a Fizz Marketplace for the buying and selling of goods, underscoring the importance of the Fizz Platform for e-commerce within its target Gen-Z demographic.

24. The FIZZ Marks are distinctive and have acquired recognition and goodwill nationwide as a result of over three years of using, advertising and promoting its social networking services, including event discovery, party planning, and community building services. Given the highly competitive nature of social applications targeting Gen-Z users, three years of continued use of the FIZZ Marks in the industry represents significant brand development.

25. Plaintiff has also marketed its Fizz Platform using the FIZZ Marks based on authenticity and community building. The Fizz Platform operates by creating networks where users can share content, discover events, and coordinate gatherings with their peers. This allows for a more authentic and community-focused social experience. The Fizz Platform promotes genuine connections and community building in the world of social networking, aligning with the broader needs of Gen-Z users that the platform was specifically designed to address.

26. As part of its business model, Plaintiff has consistently positioned its Fizz Platform for expansion into adjacent social utility services, including additional features related to event planning, group participation, and logistical coordination. Given the nature of Plaintiff's services—centered on facilitating social interaction and organizing group events such as parties—the natural zone of expansion of the Fizz Platform includes the integration of complementary services such as food and beverage coordination, RSVPs, and group purchasing.

## PARTIFUL AND PLAINTIFF HAVE BEEN COMPETING
## DIRECTLY FOR EVENT PLANNING

27. Partiful is a direct competitor of Fizz in the field of party and event planning. Partiful's website describes its mission as follows: "You deserve a party page that hypes up your event and makes it easier for guests to get the info they need. That's why we built Partiful." *See* https://partiful.com/about (Last accessed on May 7, 2025).

28. It is recognized that Partiful targets a younger, Gen-Z demographic. As described on Wikipedia: "The service has seen significant adoption among Gen Z, millennials and startup founders, with the majority of users under the age of 30." *See*

1  https://en.wikipedia.org/wiki/Partiful (Last accessed on May 7, 2025).

2      29.    As a party-planning platform, Partiful competes directly with Plaintiff.  For

3  example, Partiful is operating in the college market and competing through an "ambassador"

4  program, like Fizz:



13      See https://help.partiful.com/hc/en-us/articles/30577656210843-Does-Partiful-have-an-

14  ambassador-program (Last accessed on May 7, 2025).

15      30.    Partiful, which has failed to win the Gen-Z market through fair competition, now

16  seeks to use Plaintiff's FIZZ Marks on goods and services identical to those offered by Plaintiff,

17  to confuse the Gen-Z demographic—precisely the market that Plaintiff serves.

18  **INSTACART'S PARTNERSHIP WITH PARTIFUL TO EXPAND INSTACART'S**

19  **REACH INTO THE GEN-Z DEMOGRAPHIC**

20      31.    On about May 6, 2025, Instacart announced its new partnership with Partiful.

21  Instacart's CEO, Fidji Simo, broadcast on the LinkedIn social media platform that Instacart had

22  just launched its new "Fizz" service with its "Partiful integration, which meets people right

23  where they're already planning to hang out."  She describes that the service allows people to

24  "order together" and each to "pay your share":

25

26

27

28

-10-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



32.    Expressly, Instacart's launch of the Fizz App is designed to target a younger audience.  In an interview with Instacart's chief product officer, Daniel Danker, the PYMNTS publication explained that "Instacart is reportedly rolling out an app targeting Generation Z consumers, centered around group orders of drinks and party snacks." *See* https://www.pymnts.com/news/retail/2025/instacart-introduces-alcohol-focused-fizz-app-to-tap-gen-z-market/ (Last accessed on May 7, 2025).  Referring to the interview with Mr. Danker, the publication stated that:  "He said that Fizz will be complementary to Instacart, with younger users employing the app and then turning to Instacart as their 'lives evolve.'" *Id.*

Case No.                                                                                    COMPLAINT

## DEFENDANTS' WRONGFUL CONDUCT

33.    Despite Plaintiff's longstanding prior use of the FIZZ Marks since at least 2022, and its established common law trademark rights therein, Defendants have adopted and are using the identical Infringing Mark FIZZ in connection with directly competing services.  Both Instacart and Partiful are infringing Plaintiff's FIZZ Marks.

34.    Plaintiff's Fizz Platform is widely known as the premier platform for event coordination, and Defendants know this.  Defendants want to use Plaintiff's widely known and loved brand to unfairly compete in the marketplace.

35.    For example, Defendant Instacart uses the Infringing Mark in the Fizz App domain name, website, mobile application, social media channels, and associated advertising and marketing materials—all in connection with services that are confusingly similar to those offered by Plaintiff and targeted at the same Gen-Z demographic.

36.    On information and belief, Instacart owns the website URL <www.fizz.com" and the homepage for that website (which says that "Fizz is an Instacart app") is the following promotion of the Fizz App, including the services offered through the Fizz App:



*See* https://www.fizz.com/ (Last accessed on May 7, 2025).  Expressly, Instacart

1    promotes its Fizz App if "you're throwing a party."

2        37.    The social nature of Instacart's Fizz App is underscored by its promotional

3    materials, such as the following illustration depicting various participants chiming in with

4    comments about their shopping contributions:



15    *See* https://chainstoreage.com/instacart-debuts-fizz-group-ordering-app (Last accessed on

16    May 7, 2025).

17        38.    Likewise, Defendant Partiful uses the Infringing Mark on its website, mobile

18    application, and associated advertising and marketing materials by incorporating the Fizz App

19    into the existing Partiful app.  Below is a screenshot from the Partiful app, using the mark FIZZ

20    in connection with its "Group Order" services:

21

22

23

24

25

26

27

28

Case No.                                                                                              COMPLAINT



39.     Partiful's blog provides further description of the Fizz App, underscoring the

social nature of the service ("Watch orders roll in… See what others are getting"):



1    *See* https://partiful.com/blog/post/introducing-group-order-on-partiful (Last accessed on

2    May 7, 2025).

3        40.    Moreover, Defendants have submitted U.S. trademark applications for the

4    Infringing Mark that cover nearly identical subject matter to Plaintiff's trademark applications

5    for the Fizz Marks, further evidencing Defendants' bad faith.  For example, Defendants'

6    trademark applications filed on May 5, 2025 seek coverage for their use of the Infringing Mark

7    with respect to at least Classes 009, 035, 042, and 045. *See* U.S. Trademark Application Serial

8    Nos. 99/170,731 (Class 009) 99/170,727 (Class 035), 99/170,723 (Class 042), and 99/170,721

9    (Class 045).  Copies of the foregoing applications are attached as Exhibit 3 and incorporated

10   herein by reference.

11       41.    Defendants' unauthorized use of the FIZZ Marks in connection with their social

12   coordination platform creates a high likelihood of confusion among consumers, who may

13   mistakenly believe that Defendants' application is affiliated with, endorsed by, or otherwise

14   connected to Plaintiff's established FIZZ Platform.

15       42.    Defendants have no legitimate right or interest in the FIZZ Marks.  They are not

16   connected or affiliated with Plaintiff and have not received a license or consent, express or

17   implied, to use the FIZZ Marks in any manner.

18       43.    A TechCrunch May 6, 2025 article announcing the launch of the Fizz App

19   (https://techcrunch.com/2025/05/06/instacart-launches-fizz-a-new-app-for-ordering-drinks-and-

20   snacks-for-parties/) demonstrates that Defendants are currently using the identical Infringing

21   Mark in connection with a social coordination application designed specifically to enable Gen-Z

22   users to plan events and parties, coordinate gatherings, and facilitate social connections—

23   services that directly compete with and are confusingly similar to Plaintiff's core services:

24
25       With the launch of Fizz, Instacart is diversifying its revenue streams and offerings, all
         while appealing to new types of customers. The social, party-planning aspect of Fizz
26       enables the company to tap into a younger demographic that may not be using Instacart.

27       44.    Indeed, Instacart's press release on its own website confirms this strategy,

28   describing the Fizz App as "tailor-made for groups" and highlighting its "one-tap" social

Case No.                                                                                    COMPLAINT

1  coordination features. *See* https://www.instacart.com/company/updates/introducing-fizz-the-
2  best-way-to-order-drinks-and-snacks-as-a-group/ (Last accessed May 7, 2025).  Instacart's
3  Chief Product Officer, Daniel Danker, used the Infringing Mark repeatedly to describe the
4  social coordination aspect of the Fizz App:

5
6      A party shouldn't feel like a chore. That's why today we're launching Fizz, an all-new
       app for drink and snack delivery and the easiest way to stock up for a party together. If
       you're 21+, just pick what you want, pay for what you add, and get it all delivered for
7      one $5 flat delivery fee.
       Fizz is tailor-made for groups. It takes just one tap to invite others into your Fizz cart, so
8      everyone can choose what they want to bring. Everything is delivered right when you
       need it, no matter how many people participate, with no membership required.
9

10     45.    As a part of the coordinated launch, Defendants' Fizz App was also integrated
11  into Defendant Partiful's even-planning app.  Through this integration, Defendants offer nearly
12  identical services by enabling users to coordinate gatherings and organize social events, in
13  direct competition with Plaintiff:

14     As part of the launch, event planning app Partiful has integrated Fizz directly into invites
       for hosts and guests. You and your guests will be able to tap the Fizz link to get started on
15     a party cart. Everyone on the event page can see the whole cart right within Partiful…
       "With our new Fizz integration, we're solving another big logistical headache: stocking
16     up for a gathering and making sure everyone's tastes are accounted for — bringing your
       whole event to life in a just a few taps," Partiful CEO Shreya Murthy said in a statement
17     to TechCrunch.

18  *See* https://techcrunch.com/2025/05/06/instacart-launches-fizz-a-new-app-for-ordering-drinks-
19  and-snacks-for-parties/ (Last accessed on May 7, 2025).

20



21
22
23
24
25
26
27
28

Case No.                                                                        COMPLAINT

46.    Defendants knew or should have known of Plaintiff's established FIZZ Marks and the use of the FIZZ Marks in connection with social networking and event coordination services when Instacart and Partiful formed their partnership, developed and then launched the Fizz App.

47.    Plaintiff is informed and believes that Defendants did so in an effort to misleadingly divert consumers to use the Fizz App, by trading on Plaintiff's valuable FIZZ Marks, which had already acquired consumer goodwill and brand recognition within the industry during the preceding three-year period.

48.    Defendants' use of the Infringing Mark is designed to profit off misdirected and confused users by offering substantially similar social coordination services under the FIZZ Marks that has been used by Plaintiff in the marketplace since 2022.

49.    Defendants' use of the Infringing Mark has already caused Plaintiff harm: Plaintiff's potential investors have expressed concerns when they became confused by Defendants' unauthorized use of the FIZZ Marks and mistakenly believed that Plaintiff had partnered with Defendants based on Defendants' use of the identical Infringing Mark.

50.    Defendants have acted in bad faith by using the likelihood of confusion between the Infringing Mark and Plaintiff's FIZZ Marks to divert the traffic from Fizz, and use the goodwill of Plaintiff's FIZZ Marks to lure consumers for commercial gain and in direct competition with Plaintiff's goods and services.

51.    In particular, consumers are likely to be directly confused because the Infringing Mark is identical to Plaintiff's FIZZ Marks.  Defendants operate in the same space and offer similar goods and services, namely, social networking and event coordination services delivered through online and/or mobile apps, including by targeting the same Gen-Z demographic as Plaintiff.

## FIRST CAUSE OF ACTION

### Common Law Trademark Infringement

52.    Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein by this reference.

53.    The FIZZ Marks constitute protectable trademarks that are inherently distinctive.

Defendants' use of a copy, variation, simulation or colorable imitation of the FIZZ Marks in connection with social networking and event coordination goods and services infringes Plaintiff's exclusive rights in the FIZZ Marks, and is likely to cause confusion, mistake, or deception and constitutes trademark infringement, in violation of California common law.

54.    Defendants' conduct is without Plaintiff's permission or authority. Upon information and belief, prior to beginning this use, Defendants had actual knowledge of Plaintiff's senior rights in the FIZZ Marks for social networking and event coordination goods and services.  As a result, Defendants have committed their infringement with full knowledge of Plaintiff's rights in the FIZZ Marks, and have willfully, deliberately, and maliciously engaged in the described acts with an intent to injure Plaintiff.

55.    Defendants' willful conduct has caused damage to Plaintiff in an amount to be determined at trial, and unless restrained, will continue to cause serious and irreparable injury for which there is no adequate remedy at law.  Upon information and belief, Defendants have profited from this activity.

56.    In light of the foregoing, Plaintiff is entitled to injunctive relief and to recover from Defendants all damages, including lost profits and attorneys' fees, that Plaintiff has sustained and will sustain as a result thereof, in an amount not yet known, as well as the costs of this action.

## SECOND CAUSE OF ACTION

### Federal Trademark Infringement (15 U.S.C. § 1125(a))

57.    Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein by this reference.

58.    Defendants' use in commerce of the Infringing Mark in connection with the sale, offering for sale, distribution, and advertising of social networking and event coordination services delivered through online and/or mobile apps, in the United States is likely to cause confusion, mistake, or deception, and constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a).

59.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered

injury.  Unless Defendants are restrained by the Court, Defendants will continue and/or expand their unlawful activities alleged above, by infringing Plaintiff's FIZZ Marks and otherwise continue to cause irreparable damage and injury to Plaintiff.  No amount of money damages can adequately compensate Plaintiff if it loses the ability to control the use of its mark, reputation, and goodwill through the false and unauthorized use of its trademark.  Plaintiff is therefore entitled to injunctive relief prohibiting Defendants from using the Infringing Mark or any other trademark or designation which is likely to be confused with the FIZZ Marks.

60.    Upon information and belief Defendants adopted the Infringing Mark with the intent to unfairly compete with Plaintiff and to capitalize on the goodwill associated with the FIZZ Marks.

61.    Defendants' conduct is without Plaintiff's permission or authority.  Upon information and belief, prior to beginning this use, Defendants had actual knowledge of Plaintiff's senior rights in the FIZZ Marks for social networking related goods and services.  As a result, despite this knowledge, Defendants have willfully, deliberately, and maliciously engaged in the described acts with an intent to injure Plaintiff and to deceive the public.

62.    Upon information and belief, Defendants have unlawfully profited from this trademark infringement.

63.    This is an exceptional case under 15 U.S.C. § 1117(a). Defendants' willful conduct has caused damage to Plaintiff in an amount to be determined at trial, and unless restrained, will continue to cause serious and irreparable injury for which there is no adequate remedy at law.

64.    In light of the foregoing, as well as to recover from Defendants all damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful conduct, including but not limited to lost profits, attorneys' fees, and the costs of this action. The full amount of such damages is not yet known but, upon determination, should be enhanced pursuant to 15 U.S.C. § 1117(a).  Plaintiff is further entitled to an accounting of Defendants' profits derived from their violations of the Lanham Act.

**THIRD CAUSE OF ACTION**

**Violation of Anti-Cybersquatting Consumer Protection Act (ACPA) (15 U.S.C. § 1125(d)) Against Defendant Instacart**

65.    Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein by this reference.

66.    The FIZZ Marks are distinctive and have been used by Plaintiff for over three years in connection with its social networking and event coordination services.

67.    Defendant Instacart has recently acquired the domain name <FIZZ.COM> (the "Domain Name"), which wholly incorporates the FIZZ Marks.

68.    Plaintiff is informed and believes and thereupon alleges that Defendant Instacart had a bad faith intent to profit from the FIZZ Marks when it registered the domain name <FIZZ.COM>.  Specifically, Defendant Instacart knew or should have known of the FIZZ Marks and incorporated Plaintiff's trademark and trade name in its domain name.  In doing so, Defendant Instacart intended to divert consumers from the Fizz Platform's online location <FIZZ.SOCIAL> to the Fizz App online location for Defendant's own commercial gain.

69.    Defendant's actions in registering and operating a web site on the domain name <FIZZ.COM> are in violation of § 43(d)(1) of the Trademark Act, 15 U.S.C. § 1125(d)(1). Defendant's actions have caused irreparable injury and will, unless enjoined, continue to damage Plaintiff.

**FOURTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Laws**

**(Cal. Bus. & Prof. Code § 17200 *et. seq.*)**

70.    Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein by this reference.

71.    Defendants' conduct as alleged herein constitutes unlawful, unfair, or fraudulent business acts or practices within the meaning of California Business and Professions Code §§ 17200, *et seq*.

72.    California Business and Professions Code §§ 17200, *et seq*., provides that unfair

-20-

competition shall mean and include all unlawful, unfair, or fraudulent business practices, among other things.

73.     Defendants' business practices alleged above are unlawful, unfair and fraudulent and offend public policy as they are unscrupulous, and substantially injurious to Plaintiff and to consumers.

74.     Defendants' conduct constitutes willful and deliberate unfair competition in wanton disregard of Plaintiff's valuable intellectual property rights.  Upon information and belief, Plaintiff has suffered damages and Defendants have obtained profits or been unjustly enriched as a result of Defendants' wrongful conduct.

75.     Defendants' conduct has directly and proximately caused and will continue to cause Plaintiff substantial and irreparable injury, including consumer confusion, injury to its reputation, and diminution in value of its intellectual property, and unless restrained, will continue to seriously and irreparably impair further the value of Plaintiff's FIZZ Marks, for which there is no adequate remedy at law.

76.     In light of the foregoing, Plaintiff is entitled to injunctive relief under Cal. Bus. & Prof Code §§ 17200, *et seq*. restraining Defendants from engaging in further unlawful conduct, as well as restitution of those amounts unlawfully obtained by Defendants through their wrongful conduct.

### FIFTH CAUSE OF ACTION

### Declaratory Relief

77.     Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein by this reference.

78.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Defendants have no legitimate right or interest in the use of the FIZZ Marks, Defendant Instacart has no right to the domain name <FIZZ.COM>, and the registration of the domain name was an attempt, in bad faith, to attract traffic from Plaintiff's online location to its website.

Case No.                                                                                                            COMPLAINT

79.    A judicial declaration is necessary and appropriate so that Plaintiff may ascertain (1) its right to continue using Plaintiff's FIZZ Mark in connection with its goods and services as described in this complaint; and (2) Defendants' use of "FIZZ" is likely to cause consumer confusion and does infringe, either directly or indirectly, Plaintiff's trademark rights under 15 U.S.C. § 1125(a) and Plaintiff's common law rights.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff requests that judgment be entered in its favor against Defendants as follows:

1.    For an order and judgment that Defendants have infringed Plaintiff's trademarks in violation of Plaintiff's rights under federal law, common law, and/or California law;

2.    For an order and judgment that Defendants have unfairly competed with Plaintiff in violation of Plaintiff's rights under 15 U.S.C. § 1125(a) and California law;

3.    For an order and judgment that Defendants have acted in bad faith, willfully, intentionally, and/or in reckless disregard of Plaintiff's rights;

4.    For an order preliminarily and permanently enjoining and restraining Defendants and all persons inactive concert or participation with them:

  a.    From using or registering FIZZ Marks or any other trademark, tradename, domain name, or other designation that comprises or includes "Fizz" in connection with the sale or advertisement of social networking and event coordination services;

  b.    To immediately transfer all domain names that include "Fizz" to Plaintiff; and From engaging in false conduct intended to mislead or confuse consumers such as that specified in this complaint or other similar advertisements;

5.    For an order requiring Defendants to permanently remove all references to "Fizz" or any other trademark, tradename, domain name, or other designation that comprises or includes "Fizz" from any website or social media platform;

-22-

6.      For an order requiring Defendants to permanently cease marketing the Fizz App and using the Fizz name or the FIZZ Marks in connection with the sale or advertisement of social networking and event coordination services;

7.      For an order requiring Defendants to file with the Court and serve upon Plaintiff within fifteen (15) days after issuance of any injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

8.      For an order awarding Plaintiff:

       a.      All profits derived by Defendants' wrongful acts complained of herein;

       b.      All damages sustained by reason of Defendants' wrongful acts complained of herein;

       c.      Treble the amount of actual damages suffered by Plaintiff under 15 U.S.C. § 1117(a);

       d.      Restitution for Defendants' unfair business practices pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq.;

       e.      Punitive and exemplary damages in an amount sufficient to deter and punish Defendants for their willful and wrongful acts;

       f.      Its costs incurred in this action;

       g.      Its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a); and

       h.      Pre-judgment and post-judgment interest;

9.      For such other and further relief as the Court may deem appropriate.

Case No.                                                                                    COMPLAINT

1

## **JURY DEMAND**

2
    Plaintiff hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38.

3

4
    Respectfully submitted,

5

6
Dated: May 7, 2025              ROBINS KAPLAN LLP

7
              */s/ Steven Carlson*

8
By:   Steven Carlson
       Elvira Belle Borovik

9
    Attorneys for Plaintiff Fizz Social Corp.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.                                 COMPLAINT